Today's case will be called as previously announced and the times will be as allotted to counsel. The first case today is number 161140, United States v. Evans Bain. Good morning Mr. DeMasso. Good morning, may it please the court. My name is Chrissy DeMasso and I represent the appellant Evans Bain. I'd like to reserve two minutes for rebuttal. You may. Thank you. The home is at the very core of the Fourth Amendment's protection. In Jardines, the Supreme Court clarified that officers conduct an unreasonable search when they bring a dog to sniff for drugs at the threshold of a home. In this case, officers took keys to the threshold of a home, apartment D. They occupied that space. Where does a home start in this case? Yes, Your Honor. In this case, I'd like to focus my motion to suppress argument at the moment that officers are at the threshold of apartment D. Although we've argued that they violated the Fourth Amendment prior to that, and I continue to argue that, I don't think the court needs to reach those issues because at the very moment that officers are at the threshold of apartment D and testing keys, they're violating the Fourth Amendment. And I understand that this is sort of a multi-apartment dwelling, and I'd like to take a minute to talk about what I mean by threshold. Well, suppose we assume that the turning of the key violated the Constitution and assume further that our prior precedent in Lyon on opening a locker, particularly in lighter Jardines, is not the clear precedent. So if the results of that had been put in court directly, it would have been excluded. Here, though, the officers then went and got a warrant. Doesn't the fact that they then got a warrant mean that the test that will apply is going to be driven more by Lyon? Because we want officers to go get warrants. Yes, Your Honor. I think that in this case, the fact that they got a warrant does not excuse the conduct. I also argue separately that the warrant does not provide probable cause, even with the information obtained through those illegal searches, based on an argument that there's no nexus, but I'm going to focus on the first part initially. Courts have sometimes held that getting a warrant sort of vitiates that illegality, but they've done so where it was objectively reasonable for officers to believe that they were close to the line of validity. And I look at two cases from the Eighth Circuit here that I think are informative, Burstyn and Hopkins, and one involved a dog sniff at a window of an apartment complex, exterior window, and one involved a dog sniff at the exterior door of an apartment complex. So if we're looking then at the time the officers are executing the warrant, what is it about this warrant that would preclude, if we use the Cannon test, that would preclude an officer, a reasonable officer, from thinking this is okay? I think a reasonable officer should have known that inserting a key into the door of apartment D, given the fact that they had already unlocked another door and entered a very small residential area to even arrive at that threshold, and where the only cases in the circuit involving keys were padlocks on storage units in areas that were not, you know, near the home, were not, like, within inches of the home. I don't think any officer could reasonably have believed that the conduct at apartment D was constitutional. Could I understand what your argument is in that regard? So I had thought the reason you were saying that the use of the key is illegal is because of the trespass logic of Jardine's injunctions. If that's the logic of it, it doesn't matter whether we're dealing with a home or storage unit or anything else. Jardine's and Jones just upset the understanding that our prior cases relied on, which is you only look at it through the lens of reasonable expectation of privacy. If that's the case, wouldn't it just be clear, or do you think it's not clear, under Jones and Jardine's that this is just a trespass? I think that this is a couple of things. I think that this is a trespass as well as an invasion of a reasonable expectation of privacy. But put aside that, is there anything unclear about it being a trespass? No, I think that this is clearly a trespass. Okay, so then is that the basis for concluding it's not close to the line? I think that there's two reasons for concluding that it's not close to the line. And the first is, sort of, Jardine's and Jones, they're trespassing on a home. They're going up to this space looking for information about what's inside the home. Taking a key, using an implement. But I think also, to the extent that Lyons is out there and Lyons is not, that situation is not before the court now. And I have not, you know, how Jardine's would impact a storage unit that's not connected to the home. I guess that's the question. That suggests to me maybe there is some uncertainty as to whether the way to look at this is through reasonable expectation of privacy or trespass. And then there's a precedent on the books. It's true it was about an office, but who knows exactly how to think about reasonable expectation of privacy in this other setting, which is different than an argument that the law now is any invasion of the home's physical space, which entering the key into the lock is, you're saying, is just clearly a trespass. So what's not clear about that? No, I think that that's true. I think that after Jardine's, the officers should know that any physical invasion of the immediate surroundings, even within inches of the home's door, is a trespass. And would that have been clear on the face of the complaint? The affidavit made clear that the only way that they got the probable cause about what the key's connection to apartment D was came from entering the key into the lock and turning it without having gotten a warrant to do that. That's right. They did disclose their actions in the warrant, and they even disclosed that they then entered the apartment, which I do think does... But they didn't get anything from that entry, did they? They saw a parking ticket to Mr. Bain's car. This wasn't in the application, but it was actually from Cambridge. They saw some mail addressed to 131 Laurel, apartment D, not to Mr. Bain, and they saw a safe, just generically. I think there was a TV sitting on it. But the gun and the heroin was found not at that point. It was found after they got the warrant. So the real issue is whether they had probable cause to get the warrant. And I think that they did not. Everything else seems to be irrelevant. I think that they did not have probable cause to get the warrant for two reasons. I think that the first, like I say, is that we do have an argument that there's no nexus. I understand the court could be asking more about how the interplay of the key test comes into that. And I think that here, because it was not reasonable for these officers to think that they could go to the threshold of a private home and insert a key, that even though they disclosed that. Let's see if there's probable cause to get the warrant. They had information from an informant that the client had sold heroin twice to them. They saw him leaving the premises. And when they went to arrest him or whatever, he swallowed something that seemed to be, they thought was a drug. Then they had a key that worked in the building. Then they had a key that worked in that particular apartment. Why isn't that enough for a thresh warrant? I do think that the information about the key, at least the key at apartment D needs to be suppressed because of the illegality. It needs to be removed from consideration. But even accepting. Can you just pause before you answer that? You're making an argument, if you take away the evidence of the key, because under Reown that has to be excluded, your contention is then there's no probable cause to link him to apartment D, even though there might be probable cause to link him to the four units. We just wouldn't know which one. That's correct. I also think that there was no, I'm not going to focus on it because I think it's enough to focus on apartment D, but I do think there were Fourth Amendment violations prior to the key turning to apartment D. But I think that even accepting the affidavit, I think there's no nexus. And I think the reason for it is the facts are a little more complicated. The first drug sale is at a completely different address. They have one sale. And the police know at that point that Mr. Bain is living near that first sale. It's in Waltham. It's in a different town. But at the time of the second sale, they don't know where Mr. Bain is living. They have no idea. They get the call to have him go, to have the informant go to Malden. The informant goes there. They do not see Mr. Bain come from or go back to 131 Laurel on that day. They see him go back to his car, which is parked in the area. They don't see Mr. Bain at 131 Laurel until a week after that sale. They see him there two, maybe three times. Once he does come out on the day of the arrest and search, but he doesn't swallow the drugs until he's already locked himself in the car. There's no pattern of drug trafficking back and from the house. There's sort of the assumption, well, we had a first sale and we knew he was living there. So when we get the second sale, he must be living near there. But there's no pattern. There's no, you know, they don't have, especially if you take away the keys, they don't have other information that he's living there. His name is not on the mailbox outside. Well, on the key, the keys are in two categories. There's the first four turns of the key, the outer door, I guess three turns, and then the other two inside. And they get lucky because they test the wrong ones first. So they've now narrowed it down to one. At that point, even before they turn the key, do they have enough to know, he just came out of that building, he had a key that worked the front door, he had a key that didn't open these other two, so therefore we can infer this is his unit. I don't actually think we know the order that they tested the keys in. I think there's an indication that this was the last one or that they tested them all. They do test them all. So why would they have tested any other once they found him? To ensure that he didn't have any other space in the building because they wouldn't have any idea where he was. If I may turn briefly to the question of trafficking. Before you do that, can you just, what is the significance of what was taken from Apartment D vis-à-vis the need to suppress it? In other words, I understand you want to suppress it, but given all the other evidence there is, what is the key that what they found in Apartment D is so critical to the government's case? Well, the gun was found in Apartment D. The gun is in Apartment D. Yes. So there's no without. There's nothing. There's no gun case without that. Turning briefly to the trafficking argument, I would argue that Massachusetts trafficking is overbroad, that it includes this bringing into the Commonwealth theory of trafficking. Suppose you're right on that, though. What do you do about divisibility? I think that, and this did just come down last night, so I'm a little bit, I've read it, I've read it a couple of times still thinking about it, but I think that Faust has some applicability here, or at least helps to sort of explain how to think about divisibility. And I think that trafficking is not divisible for a couple of reasons. I think that first, there are not separate penalties for those sort of different theories. There are separate penalties for different amounts of drugs in the Massachusetts trafficking statute, depending on how much you have. And importantly, there is no Massachusetts case clearly stating that these, they describe them as categories. There's no case saying that these categories are elements that must be proven beyond a reasonable doubt. The lack of clarity would help you if there were preserved error. But as I understand it, we're on plain error review on this specific question. So does the lack of clarity then cut against you at that point? I think this is a unique context where Mathis, and then Mathis as described by Faust, where lack of clarity actually means that the court has to consider the statute to be not divisible. Even if we don't have the Shepard documents, because couldn't the Shepard documents show whether this is divisible or not in what he was charged with? May I? Yes. I think that one thing I'll say is that there is a case that indicates that indictments in Massachusetts do not, would not show which theory he was charged with. And that is Roman, where the court went back to look at whether the indictment had enough probable cause to support the three different theories, indicating that the indictment did not specify. Also, I would say that I think footnote 17 in Faust opens the possibility that even on plain error review it's not enough to look at what's in the PSR because that doesn't necessarily, even on plain error review, doesn't necessarily show what the defendant would have admitted. But the PSR isn't the Shepard documents. I'm sorry? The PSR is not the Shepard documents. That's correct. So what's the answer to the question of, on plain error review, you could have, if the Shepard documents would support your case and resolve the ambiguity, and Mathis suggests Shepard documents can do that, you haven't presented us with the Shepard documents. That's correct, we haven't. I do think that the district court is the best place to look at that, given that what's on the record right now is insufficient to show. But you can develop the record. I just don't understand why we don't have them. They're not part of the current record. I think that the district court is the best place to look at those in the first instance and determine what they show, what they might say about divisibility, and also what they might say about which, if it's divisible, which form he was convicted under. Do we know if this was a conviction by trial and verdict or a conviction by plea? I'll double-check. I believe it was plea. And that's in the record here that we can tell that? Because that wasn't clear to me. I'll double-check the PSR. Thank you. Thank you. Mr. Cromb, good morning. Good morning. May it please the Court, Randall Cromb on behalf of the government. Your Honor, in this case the officers did what I think you would want them to do. They went to execute a warrant based on probable cause, which has not been disputed of this defendant's involvement in drug dealing. When he came out of the place that he believed he was residing, he barricaded himself in his car and swallowed what they believed to be drugs, and they, upon arresting them, then sought to find out where exactly he had come from within that place in order to get a warrant to search it. And in doing what they did to identify the apartment using the keys, they did follow what we've pointed out is not only that this Court's cases, but a uniform swath of precedent across all the circuits holding that using a key and a lock simply to identify the match between key and lock is either not a search at all or not one that implicates a significant expectation of privacy. Let me ask you about that one. How do you distinguish, on the one hand, taking a dog up to sniff right outside the door and going up and actually sticking a key into the door? If we read Jardines as adopting a trespass theory, it seems to me the key is arguably even a greater search. And if that's the case, then given the precedent of Jardines, how would an objectively reasonable officer think this warrant? Would they need to exclude the key search information in the assessment of the adequacy of the warrant? Well, I think that what Your Honor says is arguably, and I think that's what makes it, because this is really in the end a good-faith case of whether they can rely on the precedent or rely on the warrant, I think one could say that it is more of an infusion. I would say perhaps it is not, and that is because a dog sniff, and one of the concerns of the court about that was that it was seeking information about the interior of the home. They were not looking for information about the door itself. The dog was sniffing to see what was going on beyond the door, inside the interior. And that's what the Seventh Circuit... If we just ask the question, is it a trespass? Well, I think we don't know on this record, and that's one of the things we point out, is that the trespass theory does depend, and Jones is very clear about this in the footnote, that it depends upon possessory interests. We put aside the withstanding to raise the trespass argument. If the homeowner was home and the key went into the lock, wouldn't it be a trespass? Is there any argument that it isn't? Well, what we point out in the one case we found within Massachusetts law suggests that there's an ownership interest of the renter in the exterior of the door. But I don't think it's foregone conclusion. The question would be, who owns the exterior walls or exterior door of an apartment? Is it the renter, or is it something that the landlord has control of and lets the renter use? But you're still asking who could raise the trespass. That's a standard point. I'm asking, is it a trespass? Presumably it would be a trespass against somebody's rights, whether it's the landlord... But is there any argument that it isn't? I'm not sure... If there is no argument that it isn't, doesn't the Fourth Amendment doctrine say when there's a trespass of the home, it's a search? Is there any argument that that's wrong? No, there's an argument about this defendant standing to raise it, but whether... Right, again, assuming that it is... I would assume that you're right, Your Honor, it's correct, that turning a key in the lock that belongs to... You can say it belongs to somebody, because it's a physical... So I understand the standing point of it being raised below. But from the perspective of determining whether the action was a reasonable one, what's the relevance of the standing point? Well, because I think there's two different things. The standing point is whether the defendant can raise it in the first place. That's an issue for the courts. I'm saying that's a question of whether the government raised that point. Well, I don't think so. This Court can affirm on grounds not raised by the government. The government's the appellee in this case. So I'm raising it to point out that this is a burden that the defendant did bear, which is to establish standing to raise the argument. That's why it's important to know what Jones said. So that has nothing to do with the reasonableness of what the officers did. That's a question about however unreasonable what the officer did, does this defendant have the right to raise it? And I understand that argument. I'm asking a separate question. You've been arguing that what the government did was reasonable, even if there was a person properly situated to raise an argument against it. And I'm trying to understand what is that argument, because I don't see what's reasonable about the conclusion that this is not a trespass, when, as you suggest, it is a trespass. Well, I guess it's a question of how broadly you understand Jardines and Jones to extend beyond their facts. Now, I understand that they are purporting to sort of revive an existing doctrine of law, but I did not find a particular case on point with respect to keys and locks on a trespass theory. So what we're saying is you have a set of law based on what the understanding was that reasonable expectation of privacy was the touchstone, saying that this kind of insertion of keys and locks is permissible. You have two cases on very different facts, Jones and Jardines, holding that certain intrusions on the curtilage or on physical chattels would constitute Fourth Amendment violations. Or searches, actually, not violations, simply searches. Then I think it is an extrapolation, and it's asking a lot of an officer to say, if a dog sniff is improper or attaching a beeper is improper, I now know that I can no longer rely on cases saying that I can turn a lock. And it's worth noting that we haven't found any case since Jardines or Jones calling into question these cases that a number of circuits holding the keys and locks are permissible, and there are post-Jardines and Jones cases upholding these types of searches. So it's not self-evident, certainly even to the appellate courts, that these searches can no longer be undertaken. Was the trespass theory raised in those post-Jardines cases? No, I'm not saying that it was, but, again, the question is reasonable reliance, and if no appellate courts and appellants in a number of post-Jardines cases have not seen it as self-evident, I think that bears on the reasonableness of an officer who's not a legal expert would see it as self-evident. Just one more iteration of it. What's not self-evident about it? I understand you're saying, in theory, it's arguable. I'm just trying to understand, in fact, from the government's perspective, what is not self-evident about it being a trespass? Well, again, I'm not sure that I could argue that abstractly because I think if one assumes that any insertion of anything into anybody else's property would be a trespass, but I would also say that I think the standing argument, Your Honor, suggested that they're entirely divorced. I don't think that's entirely true, which is to say we do expect officers to know that they can do certain things in common areas, for example, because those areas are not, by the court's precedent, within an expectation of privacy. So it is in somebody's expectation of privacy. It may be in the landlord's expectation of privacy, but the mere fact that abstractly it violates somebody's rights. The landlord wouldn't have an expectation of privacy in common areas. Well, I'm saying, my point being that we don't, the fact that there's no, that an officer would not know whose this is, or, you know, in that sense, because the point is it wasn't reasonable to believe that they were trespassing. Are you saying that perhaps it was unclear whether anyone had an expectation of privacy, hence it's not a standing issue, it's a violation? Well, it is in the sense that I think it is not just a standing, because if it's, I think, Your Honor, Judge Baird's point is that if it's a trespass, then somebody's rights are being violated, and we're not talking about reasonable expectation of privacy anymore. I think under Leone. So suppose you had, suppose they had a sniffing dog in the common area. Then, as I understand your argument, I think you'd be saying that's not clearly unconstitutional necessarily under Jardines. And I believe there's at least one case that has held that, that the court, and I think it's the Eighth Circuit case, that relied on the search warrant, but said, but I'm going to have to remind myself about that, but it says that basically even a dog sniff, which is directly akin to what happened to Jardines, transposed to the area of an apartment is not clearly wrong, and that they could rely on the warrant, you know, when the information was disclosed. So that is the point, which is that it's not to say that an argument could not be made that it should transfer or that it will. But that would be true if the only argument before us was about standing in the curvilege of a common area. But what is the argument about physically inserting the key into the lock of a door owned by another? It's hard for me to see how that's not a trespass. No, and I'm not sure I can satisfy you that it would not be a trespass as to somebody's rights. I do think that what the officers understand about whose rights are being violated is not irrelevant. They can go into areas that somebody may have the right to protect and not the defendant, and I think that it has some bearing. But just think about what the logic of that is. Didn't you just get lucky if the homeowner is not there when I barge into the house, and therefore it was reasonable for me to do it because I thought maybe he wouldn't be home and no one standing would object? That can't be right. No, no, but you would have standing to object if you had the possessor interest, I think, whether or not... No, no, the only person whose stuff was taken was the overnight guest. Right. So therefore you can break into my house because I might not be there and it was reasonable to think I wasn't there as the homeowner. That can't be right. No, and I think, again, I don't want to get too divorced from the facts of this because I think this next step is important. All Jargonians and Jones would say is that a search occurred. They don't say what the consequence of that is. They don't say that a warrant was needed to conduct that search. And one of our further arguments is that in addition to holding, some courts have held that it was not a search at all, Concepcion and to some extent Leon says this as well, this court's case, that it may be a search with just very minimal consequences because of the limited amount of information that's obtained. Finding that it was a search, agreeing with the district court that far that this was a search under Jargonians and Jones doesn't answer the question of whether this was unreasonable. The further step that it might have been a search, but a search requiring very little. The Seventh Circuit held there's a search of turning a key in a lock. It doesn't even require reasonable suspicion. So there was a proper law enforcement purpose, and that's why the context matters. Your Honor brought this up in the other part of the argument. They were searching to identify the lock in order to find out which apartment to search. Under those circumstances, courts have found that search or not, and the Seventh Circuit did find it was a search, so that would be consistent with what Jargonians and Jones might call for, but found that it was a search that required very little because it was such a minimal intrusion if all you're trying to do is identify the place that you want to search. So that's why I would say that doesn't end the inquiry whether or not we agree. Was the Seventh Circuit case a private home? I believe it was an apartment. And in more recent cases, they've gone the same route. I think Thompson, also an apartment case. So they have held that, and I think the Sixth Circuit and Salgado as well. So I think that's an important factor as well. And I would note that to the extent that there's been question about the limited nature of Leon's holding being a padlock is that the appellate courts have informally not made any distinction between the place searched, focusing on the information contained in the lock itself. Judge Cowley, you were... Are you going to move to the other issue? Well, yeah, I will. There's one small point I want to make on the question of nexus. Your Honor, I have an interesting question, but it was something I noticed in the course of her inter-oral argument that I thought was important. The question about whether he had... There was more information that suggested that he was living there. He did say in a recorded conversation that was referenced in the search warrant affidavit, but not this part of the conversation, the property asked, what are you doing out here? And he says, I'm living here now. So there is... That's information that came out at trial, which this court can consider. And I want to respond to one further question, which is I do think, as Your Honor suggested, that one could excise the turning of the key in the lock to the apartment and still uphold the warrant on the ground that they had excluded the other apartments and those individuals had not challenged the search and there's no one in the standing that has. So in some sense, by process of elimination, they had probable cause to get in the front door or there was no standing to object to it and to narrow it to the apartment they went into. I don't think that's the way the court needs to resolve the issue, but it is possible to resolve that way as well. Then turning to the sentencing issue, I think this... Like my sister, I have not had an opportunity to read Faust in detail, because it came out yesterday, but I do think there's an important distinction to be made in terms of how the issue was postured. And in the case in Faust, it was clear that the defendant had challenged the predicates, although we argued on a slightly different ground. But there was, nonetheless, clearly a challenge to the individual predicates as being satisfactory predicates. And that didn't happen here. So there's no... The issue wasn't put in front of the court at all. There was an argument, sort of a pro forma argument, that they required to be placed in the indictment and to prove beyond reasonable doubt, What puzzles me in these cases, you can read some of our precedent as suggesting that even at the court of appeals, someone can make a proffer that there are Shepard documents, here they are, and waive them and something might happen. So we might look at them or we might send it back down to the court to look at it. And yet, it almost never happens. There are presumably Shepard documents in this case somewhere, yet it seems both sides have decided not to try to supplement the record. And that happens a lot. What am I missing here? It would seem one side or the other would have an interest in... Well, I mean, I think one point here is I'm not sure that they exist here. Courts destroy their documents after a period of time. The Superior Court is often about two and a half years, so often we don't have them and we're not sure that they exist. Well, if that's the case, how can the government rely on the divisibility theory to win? Well, I mean, I think... You would have had to have looked at them and be certain that it's on the other side. But if you represent to us, by the way, they don't exist. I'm not representing that they don't. I don't know. That's a troublesome concern when nothing is presented to us. And I suppose it could be on the defendant's burden to demonstrate that they don't exist. Well, I think that... It just seems odd for the government to be relying on a divisibility theory when it's not willing to say that it has any reason to believe that if you actually looked at them, it would come out the government's way. Well, I think in this case, though, I mean, I think it is important to note the burdensome way the issue was raised. Below, there was no... The ACCA wasn't challenged at all. In fact, it conceivably was one and just simply asked to be sentenced to the minimum sentence and nothing more. There was no argument that these particular predicates, you know, were not proper in any way, divisibility or anything. So, again, while it may well be the case, and I know it's the case now that we seek the documents as a matter of course in the wake of cases like particular discounts and math that are making clear that those are very important in certain cases, that has not historically been the case where crime is treated by all parties as categorically a predicate and that it made no difference which version of it that might be considered. So, I mean, in this case, I do think the defendant has the burden of not raising the issue at all to be able to show something in terms of what the impact would be if the statute were divisible. Can I just have one last question about the... Sure. How to think about the divisibility issue on plain error? So, if I understand Mathis, if it's not clear that it's divisible, we assume it's not divisible. But we're also on plain error. So, how do those two things interact? I mean, I have a guess as to how the government thinks they interact, but could you articulate why they interact in the way that I'm guessing? Well, you know, the usual plain error standard is a reasonable probability of a different result. You know, taking Mathis as what it says that there has to be some sort of clarity, we think that in this case, the only... You know, in some cases, as Your Honor knows from Faust, there is a lot of different documentation. We have draft... You know, model jury instructions. We have lots of things that the court may consider in thinking about this. None of those appear to be available here. And what we have is one case cited by both parties in which the court did ask for the unanimous verdicts with respect to the two components, the two different variations, the primary variations between the bringing in on one hand and the other versions that require specific conduct. And I... You know, I think we have enough here to say that it's... The defendant can't meet their burden of showing that it's not shown. There's simply... When all you have points... Favors the visibility and nothing points against it. I think it's hard to show a reasonable probability. Well, what we have, though, is we have... The case law looks arguably ambiguous. It was... We don't have a specific holding by a Massachusetts court that says these are alternative findings or a jury has to be unanimous on at least one of the alternatives, whether it's the or's or the by's that separate it. And with that lack of clarity, though, Malthus seems to suggest we might look at the Shepard documents, hence the absence of the Shepard documents on a plain-error review gives rise to your argument. But I'm wondering now if the Shepard documents, if we were to know, and maybe we don't, if we were to know that the Shepard documents don't even exist, then we're back to the lack of clarity and maybe Malthus then suggests the lack of clarity cuts the other way. I understand that the lack of Shepard documents, because it's something referenced in Malthus, it sort of makes impossible one step that Malthus says is a possible step. I would add one thing. I pointed to the case that sort of says without discussion that separate unanimous findings are required, but the other thing we're also relying on, is that the SJC has said that they have different elements, that certain elements such as possession are present in some and not in others. So we have, we think, enough to say that the two prongs of Tavares' I see, which is both different elements and unanimity are met. If there aren't further questions, we'll end the brief. Thank you, Your Honors. Thank you. I'd like to start with going back to Judge Kayada. I did check the PSR. It does not say that it was a plea. All the facts come from a police report, which had sort of indicated to me that that was likely a plea, but it's not, I don't think it's before the court on this record. I'd also like to quickly point out that in Jardines, the Supreme Court actually affirmed the Florida Supreme Court decision that a dog sniff on the porch was a Fourth Amendment search unsupported by probable cause, rendering invalid the warrant based on information gathered in that search. So presumably in Jardines, you had similar facts where the police had disclosed that they did a dog search, got a warrant, and the Florida Supreme Court, which was then affirmed by the Supreme Court, is saying that that's not. Well, what was the information they got from putting the key in the lock other than the fact that the apartment belonged to the defendant? That's the information they got was that Mr. Bain had keys that worked in these two doors. And that's what you want to suppress? Yes, suppress the information that Mr. Bain had keys that worked in the door of apartment D. Because you think if you suppress that, then there's no probable cause for the warrant that led to the search of apartment D because nothing connects him to apartment D? That's right. I also think that because of just how egregious this violation was, that the police absolutely shouldn't have known that they could not walk up to within inches of a private home and trespass and insert keys and stand there, that they cannot then rely on a warrant obtained after that. It is such an egregious violation that needs to be deterred. Well, if the independent source ruled, though, if the other information they had was plenty, then doesn't the independent source rule say the warrant would stand? I think where their conduct was so out of bounds, and it's all happening immediately, that it really is sort of more of a fruits analysis. You still can't get around the illegality. Could you just address the argument that even if it's clear that it's a trespass and therefore search, it's not clear under the precedent that it's an unreasonable search given the minimal nature of the intrusion? I think that there's cases that go back beyond Jardines and Jones. They go back to the case where the police moved the turntable, flipped the turntable over to look at the serial number on the bottom, that searches are really not about how much of an intrusion there is. Especially where, that's what for me the trespass cases sort of reinvigorate, is this idea that it's not always about how much there was like a physical, how invasive was it that there's something to the idea that you have an area in which you're protected, and the home is certainly the core area in which you're protected. I think about the person sitting in the home and seeing their doorknob sort of start to rattle. And what would that, or coming home and seeing somebody fiddling with keys in your door, and what would that feel like to them? Because I do think that the Fourth Amendment to a great extent goes back to like common sense. What do people expect? Clear rules for the police. What should the police know about? What can they do? And I think here it should have been clear. You can't have a black and white rule where you're using a term unreasonable. That itself makes it difficult to define with mathematical precision. I understand that, but there are often clear rules set down. You know, Jardines sets a fairly clear rule. You know, are there questions about how far out does that extend? How close can the dog go? Yes. But when it comes to, you know, dog at, nose at the door, there's a rule there. And Jones, Jones, there's a rule. They found it was a search, but they remanded to determine whether it was reasonable. I think that Jones is different because you are talking about a car. I think that the home is really what's at the core here of really driving the idea of reasonability here. That this is someone's home. And the police are going straight up to that door. They've already come through another locked door. And they are testing keys in that door, standing there and going back and forth. But have we held that just sticking the key in the lock is not, it's minimally intrusive? That was Lyons, and I think there's two distinctions. I think the first is that that was like at a storage unit facility. And also that that did not deal with the trespass concept of Jardines. I think Jardines really does change the analysis that has to be thought about. Because the trespass analysis doesn't necessarily come with, I do think that reasonable expectation of privacy and trespass are very much tied together and not as discreet as perhaps we'd like them to be analytically. But I think that the trespass analysis doesn't import that same question of well was it really minimal? Was it a really small sort of push into the home? Was it a really, because there is, it's about the man's home is his castle. It's about what does this action do to that expectation, that feeling, that belief that really drives trespass law. If there's no further questions I'll rest on my brief for the remaining issues. Thank you.